THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAY BENNETT, JR., # R74042,  )<br>  )<br>           Plaintiff,  )<br>     vs.  )<br>  )<br>DAVID MITCHELL, CHRISTAL CROW,  )<br>LATOYA HUGHES, LT. FRANK,  )<br>C/O BENNETT, C/O RODMAN,  )<br>ROSE LOOS, MRS. McCLURE,  )<br>MRS. STUTZ, C/O COOK,  )<br>C/O HASKINS, SGT. JOHNSON, and  )<br>C/O ANDREWS,  )<br>  )<br>           Defendants.  ) | Case No. 3:24-cv-00408-GCS |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Jay Bennett, Jr., was an inmate of the Illinois Department of Corrections ("IDOC") incarcerated at Lawrence Correctional Center ("Lawrence") when he filed this civil action pursuant to 42 U.S.C. § 1983. He has since been released on parole/mandatory supervised release.[1] Plaintiff seeks redress for alleged violations of his constitutional rights that occurred while he was confined at Pinckneyville Correctional Center ("Pinckneyville"). He claims that Pinckneyville officials failed to protect him from harm and threats by other inmates, used excessive force on him, and were deliberately indifferent to his mental health needs. Plaintiff seeks monetary damages and injunctive relief. (Doc. 13, p. 22-23).

---

[1] See the Illinois Department of Corrections website, Individual in Custody Search page, https://idoc.illinois.gov/offender/inmatesearch.html (last visited July 31, 2024).

Plaintiff's First Amended Complaint[2] is now before the Court for preliminary review under 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints to filter out non-meritorious claims.[3] *See* 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE FIRST AMENDED COMPLAINT

Plaintiff arrived at Pinckneyville on July 4, 2022. He was transferred there from Shawnee Correctional Center after having a physical altercation with another inmate who had an issue with Plaintiff's homosexuality. (Doc. 13, p. 5). Upon arrival at Pinckneyville, Plaintiff told Defendant McClure (mental health staff) and internal affairs ("IA") staff about his sexual orientation and involvement with transgender inmates at Shawnee, which puts him at greater risk of harm from other inmates. Plaintiff asked to be housed with people who are unbiased against gay people, noting that he could only hide his sexuality until other inmates who know him transfer in from Shawnee, because they would expose his sexuality to others. McClure and C/O Vaughn (who is not a defendant) said they could not help him.

---

[2]    Plaintiff submitted the First Amended Complaint before the Court conducted the required merits review of the original Complaint. (Doc. 12).

[3]    The Court has jurisdiction to screen the Complaint due to Plaintiff's consent to the full jurisdiction of a Magistrate Judge (Doc. 7), and the limited consent to the exercise of Magistrate Judge jurisdiction as set forth in the Memoranda of Understanding between this Court, Wexford Health Sources, and the IDOC.

Plaintiff was housed in general population (R-2-C-69) with a known gang member. Plaintiff was fearful for his safety due to the cellmate's gang ties, and he asked his boyfriend to call the prison to request they move Plaintiff to a safer place. The boyfriend spoke twice to Defendant Bennett (Internal Affairs), who said an IA officer would speak to Plaintiff but that never happened, and Plaintiff was not moved. (Doc. 13, p. 6-7).

In November 2022, two former Shawnee inmates were transferred to Plaintiff's housing unit. Plaintiff was "forced" to pay them with commissary to keep them from exposing his homosexuality. (Doc. 13, p. 6-7). Because Plaintiff had not received any help from prison staff to keep him safe, he made a shank. The shank was discovered on November 23, 2022, in a cell search. Plaintiff was punished with 60 days in segregation. He filed a grievance raising his safety concerns, but nothing was done. (Doc. 13, p. 7, 49-53).

After writing to the mental health department in January 2023, Plaintiff saw Defendant Stutz (mental health provider) about his safety concerns and need for a safe placement. (Doc. 13, p. 8, 54-55). Stutz and another provider told Plaintiff they could not control his placement but would try to notify the placement staff of his concerns. Nonetheless, on January 23, 2023, Plaintiff was placed back on the R-2 wing where he had been threatened. He did not make his fear known to staff again because they had previously failed to help him.

In July 2023, Plaintiff was placed in R4-B-27 after release from segregation. On October 1, 2023, Jamerson, a former Shawnee inmate who was hostile to Plaintiff, was placed in R4-B-22 near Plaintiff. (Doc. 13, p. 8). That day, Jamerson told other inmates

Plaintiff was a "fag" and told Plaintiff he needed to "walk himself" to segregation. (Doc. 13, p. 9). Plaintiff informed Defendants C/O Cook and C/O Haskins that he and Jamerson were having issues, and it would turn physically violent if they were not separated. Cook and Haskins refused to take any action to protect Plaintiff.

Jamerson continued his harassment, and on October 4, 2023, Plaintiff planned to report it to IA by phone, but Jamerson intercepted him. (Doc. 13, p. 12-13). Jamerson told Plaintiff he would beat his ass if he didn't refuse housing to get off the wing. He further threatened that if Plaintiff told staff, Jamerson would have his gang members get Plaintiff wherever he went. Plaintiff asked Jamerson to leave him alone and tried to walk away, but Jamerson punched Plaintiff in the face. Plaintiff fought back to protect himself and was injured, requiring five stitches over his left eye; he also sustained multiple bruises. Plaintiff has had flashbacks and nightmares since then.

On October 13, 2023, Plaintiff asked for a crisis team because he was having suicidal thoughts from the incident. (Doc. 13, p. 10-11). Defendant Sgt. Johnson responded but refused to let Plaintiff talk to mental health. Plaintiff showed Johnson a piece of metal and said he would swallow it to kill himself. Johnson said he didn't care and again refused to summon mental health. Plaintiff swallowed the metal item. Johnson put Plaintiff in handcuffs and left him in the shower, where Plaintiff stepped over the cuffs so he could get a drink of water. Johnson returned and told Plaintiff to fix the cuffs. Plaintiff refused and said if he didn't get to talk to mental health, he would swallow a pair of fingernail clippers that he had in his mouth. Plaintiff put his hands through the chuckhole for Johnson to fix the cuffs. Johnson reapplied the handcuffs so tightly that he

cut off Plaintiff's circulation. He then jerked the cuffs upward to jam Plaintiff's wrists painfully against the chuckhole. Plaintiff was taken to health care and sent to the Carbondale hospital where the metal piece was removed via an endoscopy. (Doc. 13, p. 56-59).

On October 14-16, 2023, Plaintiff sought help from Defendants McClure and Loos (mental health staff) for his flashbacks, nightmares, anxiety, stress, depression, and suicidal ideations related to the incidents with Jamerson and Johnson, but they did nothing to help him. (Doc. 13, p. 12). Plaintiff was released from suicide watch on October 16, 2023, and he was sent back to segregation.

On October 18, 2023, Plaintiff was released from segregation and placed in R-3-B-27. He filed a grievance (No. 3546-10-23) requesting placement in protective custody ("PC") or a transfer where he could be housed with a non-biased LGBTQ+ community. (Doc. 13, p. 12-13). An IA officer interviewed Plaintiff two days later and placed him on PC/TC status in R-6-A-55.

On October 23, 2023, Plaintiff had a verbal altercation in the dayroom with Defendant C/O Andrews, who called Plaintiff a "faggot ass bitch." When Plaintiff talked back, Andrews said, "Suck my dick, you['re] on PC status cause you['re] a scary ass faggot." (Doc. 13, p. 14). Plaintiff refused Andrews's order to lock up. The sergeant intervened and asked Plaintiff to lock up. Andrews returned an hour later, prompting Plaintiff to request a crisis team. Andrews responded, "fuck you faggot, I don't care about

your mental health." *Id.* Plaintiff attempted to file a PREA[4] complaint by calling the PREA phone line and filing a grievance, but he never got a response.

The next day, another inmate came by Plaintiff's PC cell and threatened to beat him for snitching on Jamerson when Plaintiff got out. (Doc. 13, p. 15). Plaintiff told the IA officer and filed a grievance.

On November 23, 2023, Plaintiff (still in PC) was made to eat in the chow hall among general population inmates. On December 13, 2023, he was forced to attend a re-entry class with general population inmates. Staff did nothing to protect Plaintiff when he raised safety concerns.

On December 18, 2023, Defendant C/O Rodman told Plaintiff that he could not stay on PC status unless he could provide Rodman with the names of those threatening him. (Doc. 13, p. 16). Plaintiff didn't know the names, but he still feared for his life. Plaintiff didn't want to get a ticket for refusing housing, so he returned to general population the next day. Plaintiff continued to fear for his physical safety and endured mental and emotional distress.

On January 4, 2024, Plaintiff was ticketed for having a homemade weapon and placed in segregation/restrictive housing. He was denied a transfer because he was due for release from prison soon. He again requested PC status but got no response.

On February 28, 2024, Plaintiff asked for a crisis team, but the wing officer ignored him. Plaintiff tried to take his life by overdosing on a drug and nearly succeeded but was

---

[4]   Prison Rape Elimination Act.

saved by his cellmate performing CPR for 25 minutes while the officer ignored the situation. (Doc. 13, p. 17-18). Plaintiff was revived and taken to the Pinckneyville hospital.

A few days later, Plaintiff was interviewed by IA and allowed to fill out a PC request. On March 8, 2024, Plaintiff was told he would be transferred to Lawrence. He didn't believe this, so he overdosed again. After returning from the hospital, on March 9, 2024, Plaintiff was transferred to Lawrence and placed in segregation. (Doc. 13, p. 18-19).

Plaintiff continues to fear being around other people, and he rarely asks for help because he is accustomed to being ignored. He made the choice to get into trouble and go to segregation because staff have refused to keep him safe. (Doc. 13, p. 19).

As relief, Plaintiff seeks an injunction requiring Defendants to follow their own rules and stop violating prisoners' rights. (Doc. 13, p. 22). He also requests compensatory and punitive damages. (Doc. 13, p. 23).

## DISCUSSION

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

   Count 1:    Eighth Amendment claims against McClure and Stutz for failing to obtain a safe housing placement for Plaintiff in July 2022 and January 2023.

   Count 2:    Eighth Amendment failure to protect claim against Bennett for ignoring requests to move Plaintiff away from the gang-affiliated cellmate in approximately July-August 2022.

   Count 3:    Eighth Amendment failure to protect claim against Cook and Haskins for ignoring Plaintiff's pleas to be separated from Jamerson on or about October 1, 2023, which allowed Jamerson to attack Plaintiff on October 4, 2023.

> Count 4: Eighth Amendment deliberate indifference to serious mental health needs claim against Johnson for ignoring Plaintiff's threat to self-harm and request for a mental health crisis team on October 13, 2023.
>
> Count 5: Eighth Amendment excessive force claim against Johnson for cuffing Plaintiff too tightly and yanking his wrists against the chuckhole on October 13, 2023.
>
> Count 6: Eighth Amendment claim against McClure and Loos for failing to provide Plaintiff with mental health treatment or assistance in October 2023.
>
> Count 7: Eighth Amendment deliberate indifference to serious mental health needs claim against Andrews for refusing Plaintiff's request for a mental health crisis team after Andrews verbally harassed Plaintiff on October 23, 2023.
>
> Count 8: Eighth Amendment failure to protect claim for requiring Plaintiff to mingle with general population inmates while he was in protective custody in November and December 2023.
>
> Count 9: Eighth Amendment failure to protect claim against Rodman for removing Plaintiff from protective custody in December 2023.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[5]

---

[5] *See, e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

**Preliminary Dismissals/Injunctive Relief**

Plaintiff includes Pinckneyville Wardens David Mitchell and Christal Crow, Acting IDOC Director Latoya Hughes, and Lt. Frank as named Defendants, but he fails to mention them at all in his statement of claim and does not describe what they allegedly did to violate his constitutional rights. (Doc. 13, p. 1-3, 5-23). Merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See, e.g.*, *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) (noting that "[a] plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). Additionally, a defendant cannot be held liable for the misconduct of subordinate staff merely because a defendant held supervisory authority. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Because Plaintiff has not articulated any claim against Mitchell, Crow, Hughes, or Frank, these defendants will be dismissed from the action without prejudice.

The current Warden of Pinckneyville, in his/her official capacity, would be the proper defendant for the purpose of implementing any injunctive relief that might be ordered. *See Gonzales v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). However, because Plaintiff is no longer incarcerated at Pinckneyville, his request for injunctive relief has become moot. *See Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). Only if Plaintiff can show a realistic possibility that he would again be incarcerated at Pinckneyville under the conditions described in the Complaint, would it be proper for the Court to consider injunctive relief. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir. 2009)). Accordingly, there is no reason for the

Pinckneyville Warden to remain as a defendant.

## Official Capacity Claims

Plaintiff raises claims against each defendant in his or her individual and official capacities. However, Plaintiff's claims for monetary damages may only be pursued against state officials in their individual capacities. *See Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005); *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir. 1987). Accordingly, the official capacity claims against the remaining individual defendants are dismissed without prejudice.

## Count 1

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). Typically, the plaintiff must show that he complained to prison officials about a specific and credible danger to his safety. *See Santiago v. Walls*, 599 F.3d 749, 758-759 (7th Cir. 2010); *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). To state a claim for failure to protect, a plaintiff must plead facts suggesting he is incarcerated under conditions posing a substantial risk of serious harm, and the defendants acted with "deliberate indifference" to that danger. *Farmer*, 511 U.S. at 834; *Pinkston*, 440 F.3d at 889.

Plaintiff asked McClure to help him be placed with inmates who were tolerant of gay people when he arrived at Pinckneyville in July 2022, and he made a similar request to Stutz in January 2023. These mental health providers told Plaintiff they had no control over placement decisions. Stutz said she would contact the placement staff about his

concerns; it is unknown whether she did so. In November 2022, Plaintiff was housed with inmates who threatened to expose his homosexuality to others. While Plaintiff capitulated to their extortion, he does not allege he was physically harmed. Based on these allegations, it cannot be said that McClure or Stutz were deliberately indifferent to Plaintiff's concerns on these occasions. In July 2022, Plaintiff had not yet experienced any threat to his safety. In January 2023, Plaintiff likewise had not been physically harmed, nor does he indicate he received threats of physical harm. Further, Stutz had no apparent authority to change Plaintiff's housing location. Count 1 will be dismissed for failure to state a claim upon which relief may be granted.

**Count 2**

Plaintiff was placed with a known gang member in July-August 2022; this made Plaintiff fearful for his safety. He alleges his boyfriend spoke twice by telephone to IA Officer Bennett, who said he would speak to Plaintiff about moving him to a different cell. However, neither Bennett nor any other IA officer ever contacted Plaintiff, and Plaintiff was never moved. Plaintiff does not allege that this cellmate ever issued any threats to harm Plaintiff or that he was physically harmed.

A prison official may be liable for deliberately endangering an inmate's safety when the official knows that the inmate faces a significant risk of harm yet intentionally or recklessly exposes the inmate to that risk anyway. *See Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013); *Brown v. Budz,* 398 F.3d 904, 915 (7th Cir. 2005) (collecting cases); *Wright v. Miller*, No. 13-1670, 561 Fed. Appx. 551, 555 (7th Cir. April 14, 2014). Here, Plaintiff does not disclose what information his boyfriend allegedly gave to Bennett, and Plaintiff

himself did not directly contact Bennett. Thus, the facts as pled do not suggest Bennett was sufficiently informed of the risk Plaintiff allegedly faced from this cellmate, such that his lack of action could amount to deliberate indifference, rather than mere negligence. Accordingly, Count 2 will be dismissed without prejudice.

### Count 3

In contrast, Plaintiff had a history of hostility from inmate Jamerson as Jamerson had previously voiced threats to Plaintiff. On October 1, 2023, Plaintiff informed Defendants Cook and Haskins about the likelihood of physical violence if he and Jamerson remained in the same housing area. Cook and Haskins took no action and three days later, Jamerson verbally threatened Plaintiff and then punched him, starting a fight in which Plaintiff was injured.

These allegations indicate that Plaintiff complained to these defendants about a specific and credible physical danger from Jamerson. *See Santiago*, 599 F.3d at 758-759; *Pope*, 86 F.3d at 92. The failure by Cook and Haskins to act to mitigate that threat supports Plaintiff's claim that they were deliberately indifferent to the risk he faced. The failure to protect claim in Count 3 may therefore proceed.

### Count 4

A prison official's deliberate indifference to a prisoner's serious medical or mental health needs violates the Eighth Amendment's prohibition against cruel and unusual punishment. *See Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical or mental health condition, and (2) the defendant acted with

deliberate indifference to his medical/mental health needs. *Id.* Suicide is objectively serious. As such, "prison officials must take reasonable preventative steps when they are aware that there is a substantial risk that an inmate may attempt to take his own life." *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000).

Plaintiff alleges that on October 13, 2023, soon after the incident with Jamerson, he asked Defendant Johnson for a crisis team and showed Johnson a piece of metal he planned to swallow to kill himself. Johnson told Plaintiff he didn't care, and he refused to contact a mental health provider. Count 4 for deliberate indifference to Plaintiff's mental health condition will proceed for further consideration.

### Count 5

After Plaintiff swallowed the piece of metal, Johnson left him in the shower in handcuffs. When Johnson needed to remove and reapply the cuffs, he allegedly applied them so tightly that Plaintiff's circulation was cut off. Johnson then allegedly jerked the cuffs upward while Plaintiff's hands were outside the chuckhole, jamming Plaintiff's wrists against the chuckhole and inflicting pain.

"Correctional officers violate the Eighth Amendment when they use force not in a good faith effort to maintain or restore discipline, but maliciously and sadistically for the very purpose of causing harm." *Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010). The Complaint alleges this is exactly what Johnson did. Count 5 for excessive force may also proceed against Johnson.

### Count 6

Between October 14, 2023, and October 16, 2023, after Plaintiff states he was

attacked by Jamerson and attempted to kill himself in front of Defendant Johnson, he sought help for his mental health symptoms from McClure and Loos. They allegedly failed to provide him with any treatment for his suicidal ideations, flashbacks, nightmares, anxiety, stress, and depression. Those symptoms indicate that Plaintiff suffered from objectively serious mental health conditions. A defendant's deliberate indifference to a prisoner's serious medical or mental health needs violates the Eighth Amendment's prohibition against cruel and unusual punishment. *See Rasho*, 856 F.3d at 475. Plaintiff's allegations that McClure and Loos disregarded his mental health conditions in October 2023 are sufficient to state a claim at this stage. Accordingly, the deliberate indifference claims in Count 6 against McClure and Loos for their actions/inactions in October 2023 will proceed.

### Count 7

Plaintiff's claim against C/O Andrews arose while Plaintiff was in protective custody on October 23, 2023, not long after the incidents with Jamerson and Johnson and his suicide attempt. Anderson used abusive and homophobic language toward Plaintiff, suggested a sexual act, and refused Plaintiff's request for a mental health crisis team, saying he didn't care about Plaintiff's mental health. These allegations suffice to support a deliberate indifference claim. Count 7 will thus proceed against Andrews.

### Count 8

The incidents Plaintiff describes on November 23, 2023, and December 13, 2023, when he was required to interact with general population inmates despite being in protective custody status, are concerning. However, Plaintiff fails to associate any

defendant with these occurrences. For that reason, Count 8 will be dismissed without prejudice.

**Count 9**

Rodman allegedly removed Plaintiff from protective custody on December 18, 2023, because Plaintiff was unable to provide names of inmates who were threatening him. Back in general population, Plaintiff continued to fear for his physical safety.

As discussed in Count 2 above, a defendant may be liable for deliberately endangering an inmate's safety when the official knows that the inmate faces a significant risk of harm yet intentionally or recklessly exposes the inmate to that risk. *See Budd*, 711 F.3d at 843; *Brown,* 398 F.3d at 915 (collecting cases); *Wright*, 561 Fed. Appx. at 555. This may include exposing an inmate to psychological harm or a heightened risk of future injury, even in the absence of an actual attack. *See Wright*, 561 Fed. Appx. at 555. Given Plaintiff's recent history with Jamerson, who attacked Plaintiff and informed other inmates of Plaintiff's sexual orientation, Plaintiff had a particular vulnerability due to this status. Rodman's knowledge of that heightened risk and failure to keep Plaintiff in protective custody may amount to deliberate indifference. Count 9 may also proceed at this stage.

**PENDING MOTIONS**

Plaintiff's Motions for Appointment of Counsel (Doc. 3, 4) are **DENIED** without prejudice. There is no constitutional or statutory right to counsel in federal civil cases. *See Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). In determining whether to recruit counsel, the Court considers whether the *pro se* party has made reasonable efforts to

secure counsel and his ability to litigate the case on his own. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Here, Plaintiff has not established any efforts made to obtain counsel. Moreover, at this early stage of the litigation, it is difficult to accurately evaluate the need for assistance of counsel, so recruitment of counsel would be premature. *See, e.g.*, *Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) (stating that "until the defendants respond to the complaint, the plaintiff's need for assistance of counsel . . . cannot be gauged.").

Should Plaintiff encounter difficulties in self-representation as this case proceeds, he may refile his motion seeking recruitment of counsel. If he renews his request, he should submit at least 3 rejection letters from attorneys to show that he has made reasonable efforts to obtain counsel.

## DISPOSITION

The Complaint states colorable claims in Count 3 against Cook and Haskins, in Counts 4 and 5 against Johnson, in Count 6 against McClure and Loos, in Count 7 against Andrews, and in Count 9 against Rodman. Counts 1, 2, and 8 are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. Defendants Mitchell, Crow, Hughes, Frank, Bennett, and Stutz are **DISMISSED** from the action without prejudice.

The Clerk shall prepare for C/O Rodman, Rose Loos, Mrs. McClure, C/O Cook, C/O Haskins, Sgt. Johnson, and C/O Andrews: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this

Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. § 1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court

will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act ("HIPAA").

**IT IS SO ORDERED.**

**DATED: August 20, 2024.**

Digitally signed by Judge Sison
Date: 2024.08.20 10:03:35 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**


## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so**.